**Charles Ray COOPER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 48134.**

Court of Criminal Appeals of Texas.

May 29, 1974.

**566**

Jack Woods, College Station, for appellant.

W. T. McDonald, Jr., Dist. Atty., Bryan, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

REYNOLDS, Commissioner.

Appellant's conviction is for armed robbery. The jury fixed punishment at the minimum term of five years and declined to recommend probation.

Appellant does not question the sufficiency of the evidence to support the conviction. It sufficiently describes the offense to record that two men, one with unconcealed facial features and the other wearing a ski mask and exhibiting a gun,

forcibly took money from Cynthia Ella Daniel, the cashier of the Sugar and Spice No. 2 store in Bryan, in the presence of her husband, Virgil Dean Daniel. Both Mr. and Mrs. Daniel identified appellant as the robber whose facial features were not concealed. Other witnesses placed appellant near the scene of the crime.

The appellant testified. He said he was in the vicinity of, and saw two men coming from, the store at the time of the robbery. He stated that he did not recognize either man, but that he later heard who they were. Appellant was not asked if he participated in the robbery.

Questioned, however, in five grounds of error is the propriety of the trial court's actions in overruling (a) appellant's motion for continuance based on surprise, (b) his motion for mistrial founded on a claim of prejudicial testimony given during the punishment stage of the trial, and (c) his motion for new trial premised on jury misconduct.

Initially, appellant claims that he was surprised, and entitled to a continuance, when Cynthia Ella Daniel identified him as one of the robbers. This was a surprise, appellant asserts, because a few days before the trial Mrs. Daniel had told his counsel that she could not identify either one of the robbers. He submits that the overruling of his motion for continuance was a denial of a fair trial, citing Shaddix v. State, 90 Tex.Cr.R. 431, 235 S.W. 602 (1921), apparently for the general statement contained therein that reversal has occurred upon refusal of a motion for continuance in the event of unforeseen testimony.

Virgil Dean Daniel was the first witness called by the State. He recounted the details of the robbery and identified appellant as one of the participants in the robbery. The next witness was Cynthia Ella Daniel. She also testified to the events surrounding the robbery and positively identified appellant as the robber whose facial features were not concealed. On cross-examination, Mrs. Daniel denied that she had told appellant's counsel a few days prior to trial that she could not identify either robber. After appellant had testified, his counsel became a witness to testify that Mrs. Daniel told him some ten days before trial that she could not identify either one of the robbers.

■ A continuance after the trial has begun is authorized by Article 29.13, Vernon's Ann.C.C.P., when by some unexpected occurrence during the trial the applicant is so taken by surprise that a fair trial cannot be had. The motion is addressed to the sound discretion of the court. Bradshaw v. State, 482 S.W.2d 233 (Tex.Cr. App.1972).

■ Assuming the motion for continuance was timely urged,[1] we cannot say that the trial judge clearly abused the discretion he exercised in the matter. The appellant had been unequivocally identified prior to the identification testimony of Mrs. Daniel claimed to be a surprise. Neither the motion for continuance nor any statement by appellant's counsel found in the record indicated to the trial court how counsel could have benefitted by a continuance, or that there was any expectation that a continuance would enable appellant to present any fact or facts contrary to the

1. Here, the record does not show with specificity when appellant moved for a continuance. Neither the docket sheet nor the record of the examination of the witnesses refers to the motion. The record contains the motion for continuance, which was filed at 4:35 p. m. on the first day of the trial commencing at 9:00 a. m. The testimony claimed to be a surprise was adduced from the second witness testifying. A rough calculation from the time elements contained in the record reasonably supports the inference that the motion was filed, not at the time Mrs. Daniel gave her testimony, but at the close of the defense testimony.

identification testimony given by Mrs. Daniel.[2]

Neither are we persuaded by appellant's claim that the denial of a continuance was the moving cause of his testifying, thereby subjecting him to the hazards of the effect of testimony concerning a polygraph examination and his prior "runins" and problems with law enforcement officers of Brazos County. The reason that appellant testified is not stated in the record; but, accepting this statement from the brief to be the reason why appellant testified, there is no error. Appellant himself volunteered the information concerning the polygraph examination, the result of which was not revealed, and he injected his prior "runins" with law enforcement officers in his direct testimony.

Furthermore, Shaddix v. State, supra, is not controlling of the facts here. The holdings of that case were that the failure to move for a continuance precludes a showing of error, and that the mere introduction of witnesses whose names are unknown to appellant does not of itself constitute surprise or a ground of reversal. More authoritative is Welk v. State, 99 Tex.Cr.R. 235, 265 S.W. 914 (1924), where, under circumstances similar to but stronger than those in the instant case because there the witness admitted he had falsified his pre-trial statement given to appellant's attorney, it was held, in upholding a conviction for which a sentence of death was imposed, that there was no error in overruling a motion for continuance. The first ground is overruled.

 Next considered is the fifth ground of error. It is that the court erroneously overruled the motion for mistrial made when a police officer gave untruthful testimony concerning appellant's record at the hearing on punishment.

Appellant filed a verified motion for probation, and also personally testified in support thereof, stating that he had not been previously convicted of a felony offense. During the trial it was shown that appellant had been previously arrested only once, apparently for "fighting." The State produced no evidence, documentary or otherwise, of a prior felony conviction.

The State's witness, Lieutenant Bobby Riggs of the Bryan Police Department, testified that appellant's general reputation for being a peaceable and law-abiding citizen was bad. In pursuing this subject on cross-examination, appellant's counsel asked the following questions and received the responses indicated:

"Q How many times have you arrested him (appellant)?

"A I have been in on one arrest of the subject.

"Q Was this one for fighting?

"A No, sir.

"Q Did this end up in a determination of 'Guilty' for a felony?

"A Yes, sir.

"Q Is it this particular felony?

"A No, sir.

"Q You are testifying, then, that to your knowledge Charles Ray Cooper has been adjudged guilty in a felony case; is that correct?

2. At the hearing on the motion for new trial, juror Beatrice Schaefer testified that after the trial a woman, who was not named and who said she used to work with Cynthia Ella Daniel, upon being told that Mrs. Daniel identified appellant, said, "When I talked to her two weeks ago she was still confused." The unnamed party was not called as a witness at the hearing and no reason is given therefor. The testimony was hearsay as appellant's counsel candidly concedes and, as hearsay, it had no probative value. Salas v. State, 403 S.W.2d 440 (Tex.Cr.App.1966). Moreover, had the motion for continuance been predicated on the absence of this unnamed party and the necessity for her testimony, the overruling of the motion would not have constituted an abuse of discretion since the continuance would have been sought to obtain impeachment testimony. See Keel v. State, 434 S.W.2d 687 (Tex.Cr.App.1968), and cases cited therein.

"A What I am interpreting it, it is. I could go further on what my thinking is."

Immediately thereafter, appellant's counsel, commenting to the court that appellant had sworn to the fact that there had been no felony conviction, stated, "(T)his has to be settled." The court responded, "He is not testifying as to prior convictions; he is testifying as to his general reputation." A discussion, unrecorded, was held at the bench.

Following the discussion, appellant's counsel then asked the witness whether, and received the affirmative reply that, so far as the witness was concerned, among police officers appellant has a bad reputation. Without requesting any instruction be given to the jury, the motion for mistrial was then made on the assertion that the testimony was so prejudicial (not false) that it could not possibly be eliminated from the record.

A general argument, without citation of authority, is presented. The thrust of the presentation is that, since defense counsel on cross-examination moves in an area where he cannot know what an adverse witness will testify to and realizes that he might well damage his client's cause beyond repair in trying to discredit the witness's testimony, intentional or unintentional false police testimony of a material matter denies a fair trial. The harm suggested is that, except for the officer's testimony, the jury might well have recommended probation.

We perceive no error in the denial of the motion for mistrial. On the one hand, it was counsel himself, and not the witness, who uttered the words now complained to be false in imputing a prior felony conviction to appellant. In view of the comment made by the court, there is no doubt that the court, if a request had been made, would have appropriately instructed the jury, and such instruction would have rectified the situation.

On the other hand, the officer's response, considered in context, cannot be branded categorically as a false answer. Responsive to the question propounded, the officer's answer was tantamount to saying, "Under my interpretation, I agree with the declaration made as the basis for your inquiry, but I will explain why I think I agree if you want me to do so." But counsel declined the invitation and abandoned any further inquiry into the matter.

If Lieutenant Riggs was in error in his interpretation, the proper recourse was to expose the inaccuracy by effective cross-examination, and not the abandonment of all further interrogation and assertion of entitlement to a mistrial because the testimony was prejudicial. The very purpose of cross-examination is to discover the truth by testing the credibility of the witness and the accuracy of his testimony. See, McCormick and Ray, Texas Law of Evidence, 2d Ed. 1956, §§ 591–592.

Moreover, the record does not support the suggestion of the harm that appellant proposes might have occurred. At the motion for new trial hearing, it was shown that the first jury ballot was approximately seven to five for probation; but only one juror, Selma Grady, was questioned as to the reason why she changed her original vote for probation. Her reason, and only reason, for changing her vote to confinement was that the appellant would have, in her opinion, a better chance of rehabilitation in the penitentiary. Absent sufficient cause shown to interfere with the discretion the trial court employed in overruling the motion for mistrial, the fifth ground is overruled.

■ The remaining grounds of error relate to jury misconduct. The first relates to a statement made by juror Banks. At the hearing on the motion for new trial the appellant testified that during the selection of the jury he did not recognize prospective juror Banks, but that after the jury had been selected, but before any evidence was adduced, he realized that she was the

mother-in-law of one Fred Jenkins. Once he realized her identity, that she had been selected on the jury and that she might be a prejudiced juror, appellant did not make such fact known to the trial court nor did he move to quash the panel or for a mistrial so as to expunge this objectionable juror. Cf. Lee v. State, 164 Tex.Cr.R. 532, 301 S.W.2d 114 and cases there cited.

Thereafter during the deliberations it was shown that juror Banks told her fellow jurors that Fred Jenkins prior to his death had been her son-in-law and that she resented any efforts to implicate him in the commission of the offense for which the appellant was being tried and especially so because Jenkins was not here to defend himself.[1]

By stating that she resented Jenkins' being implicated, juror Banks injected no new and harmful fact into the case. She merely stated that she resented an inference being drawn from facts that were already in evidence.

Since appellant made no effort to have the objectionable juror removed, and since juror Banks injected no new and harmful fact into the case, we conclude that the trial court did not err in failing to grant the motion for new trial.

■■ The second relates to the following. The affidavit of juror Stormer recites that during their deliberations the question of parole was being discussed and juror Willie Mae Gooden stated that she had nephews who had gone to the Huntsville penitentiary and had been paroled and that the law was that a prisoner had to serve only seven months and a few days for each year he was sentenced to prison. While testifying at the hearing on the motion for new trial, juror Gooden disclaimed any knowledge of the law and said that she spoke to her fellow jurors only from the experience she had had with her nephews. The affidavit further recited that the ju-

rors discussed the fact that the appellant would serve "only a little over one-half of the time on any sentence before he would be released . . . providing good behavior. . ."

When we consider jurors' testimony as well as the affidavit, together with the effect of Article 42.12, Sec. 15, V.A.C.C.P. (Adult Probation and Parole Law), we conclude that the jury's discussion was not a misstatement of the law. In Roberson v. State, 160 Tex.Cr.R. 381, 271 S.W.2d 663, we noted that where the law provided for the release of the accused in less time than that discussed by the jury, reversible error was not reflected by the jury's discussion of the parole law.

Of paramount importance in discussing a question of this nature is the fact that we find no evidence that the jury relied upon any discussion of the parole law in reaching its verdict in this case.

Finding no reversible error, the judgment is affirmed.

Opinion approved by the Court.

---

[1]. Although Jenkins' name had been injected in the trial, appellant in his testimony did not contend that Jenkins was responsible for the instant robbery.